TOLL *v.* LEWIS.

Opinion delivered November 4, 1918.

1.   FRAUDS, STATUTE OF—PARTNERSHIP IN LANDS.—A valid agreement between two persons whereby they agreed to buy certain lands jointly and to divide the profits from a resale thereof is not within the statute of frauds.

2.   APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A finding of the chancellor not clearly against the weight of the evidence will not be disturbed on appeal.

3.   PARTNERSHIP—SALE OF PARTNERSHIP PROPERTY—LIEN.—Upon a sale of partnership property in order to adjust the equities between the parties, it was proper to adjudge a lien in favor of one of the parties for any balance found to be due against the proceeds of the sale which would go to the other party.

Appeal from Prairie Chancery Court; *Jno. M. Elliott,* Chancellor; modified and reversed.

*J. G. Thweatt* and *Samuel Frauenthal,* for appellant.

1. The preponderance of the testimony shows that the various tracts of land were bought individually by C. F. Toll and that there was no partnership but an individual transaction of Toll.

2. But if they were partners, the chancellor erred in his findings as to the amounts paid by Toll on the purchase price, expenses, commissions and taxes and the allowances made to Lewis.

3. The court erred against the right of Geo. O. Toll as to the $700 mortgage.

*George C. Lewis,* for appellee.

There are no legal questions involved and the preponderance of the testimony sustains the findings of the chancellor.

HART, J.  Geo. C. Lewis brought suit in equity against C. F. Toll and Geo. O. Toll for an accounting of profits in a partnership between Geo. C. Lewis and C. F. Toll for the purchase and resale of lands.  Geo. O. Toll was made a party because C. F. Toll had mortgaged to him one of the tracts of land belonging to the partnership.  The defendants denied the existence of the partnership and denied that they were due the plaintiff anything on account of such partnership.

The chancellor found that there was a partnership formed between Geo. C. Lewis and C. F. Toll for the purchase and resale of lands; that there was an amount due C. F. Toll by the partnership for moneys furnished by him in purchasing the partnership lands; that C. F. Toll had sold the partnership lands at a profit and was in possession of the proceeds; that C. F. Toll had mortgaged one tract of land to Geo. O. Toll, and that the mortgage was a valid and subsisting mortgage.  The chancellor struck a balance between the money furnished by C. F. Toll for the partnership and the profits received by him

in excess thereof and a decree was entered in favor of Geo. C. Lewis against him for this. balance.

It was also decreed that the partnership lands mortgaged by C. F. Toll to Geo. O. Toll should be sold and the proceeds applied first to the payment of the mortgage debt and that the remainder be divided equally between Geo. C. Lewis and C. F. Toll; that the former have judgment against the latter for one-half of the mortgage debt, and that this amount be paid to Lewis out of C. F. Toll's share of the proceeds of the sale of the partnership lands remaining after the payment of the mortgage to Geo. O. Toll. The defendants have appealed.

In *Beebe* v. *Olentine,* 97 Ark. 390, it was held that under a contract whereby two persons were to buy certain lands for the purpose of resale, sharing equally in the expenses and profits, a partnership was formed. It was further held that the verbal agreement between the two persons whereby they agreed to buy certain lands jointly and to divide the profits from a resale thereof is not within the statute of frauds.

Counsel for defendants recognize this principle of law, but contend that the court erred in finding the facts on this issue in favor of the plaintiff. This brings us to a consideration of the testimony on this point. Lewis and C. F. Toll were the principal witnesses in the case.

According to the testimony of Geo. C. Lewis, himself, during the year 1910, he was engaged in promoting and constructing a railroad from Mesa in Prairie County, Arkansas, to Stuttgart, in Arkansas County, Arkansas. He had known C. F. Toll and dealt with him in lands for a number of years prior to this time. Toll owned land along the line of the proposed railroad and was much interested in the success of it. It was thought, not only that the construction of the railroad would increase the value of the land along its proposed route, but there would be a certain amount of activity in the purchase and sale thereof. It was known that practically all of the money of the plaintiff was tied up in the proposed railroad, but inasmuch as he was the promoter of it, the defendant

agreed to furnish the money for the purpose of buying lands along the proposed route and selling them again at a profit. So a partnership was formed between the parties for this purpose. Toll was to furnish most of the money for the purchase of the lands and, after selling them again, was to reimburse himself for the amount expended by him for the lands and the profits and losses were to be shared equally between the parties. Four tracts of land were thus purchased by the partners and three of them were sold again at a profit. The remaining tract was still held by the partnership at the time of the bringing of this suit, but Toll had mortgaged it to his brother. The first tract of land was purchased in the name of Geo. C. Lewis and he paid a small amount of the purchase money. Subsequently Toll furnished the amount necessary to pay the balance of the purchase money and because he had done this, he thought the titles should be in his name to better secure him. Lewis then conveyed the land to Toll and Toll afterwards sold it at a profit. The titles to the remaining three tracts of land were taken in the name of Toll and he paid nearly all of the purchase price thereof.

According to the testimony of Toll there was never any partnership agreed upon between him and Lewis except for the purchase of two of these tracts. Toll told Lewis that he contemplated buying these two tracts of land and selling them again at a profit and that if Lewis would pay one-half of the purchase price he would divide the profits equally with him. Lewis never furnished any part of the purchase money and told Toll that he was unable to do so. Thereupon Toll purchased the lands and sold them again on his own account. Lewis purchased the first tract of land on his own account and, being unable to raise the purchase money, sold the land to Toll, and no partnership existed between them as to this tract of land or to the tract of land which Toll purchased in his own name and afterwards mortgaged to his brother. The above is a brief summary of the testimony of the parties on the issue of the partnership.

It will be observed that there is a sharp and irreconcilable conflict in their testimony, Lewis affirming and Toll denying the existence of a partnership. It is earnestly insisted by counsel for the defendant, C. F. Toll, that all the circumstances in the case strongly corroborate him. They point to the fact that all the money of Lewis was tied up in his proposed railroad and that Toll knew this fact; that it could never have been of any interest to Toll to have gone into partnership with Lewis when Toll would have to furnish all the money and was to have all the trouble of selling the lands again. They claim that it was only after Toll had sold the lands at a profit that Lewis claimed any partnership in them. They insist that the fact that the titles to the lands were taken in the name of Toll point strongly to the fact that they were individual transactions of his own.

On the other hand it is claimed by counsel for the plaintiff that the titles were taken in the name of Toll to better secure him inasmuch as he was to furnish the purchase money; that the inducement for Toll to go into partnership with Lewis for the purchase and resale of these lands was that Lewis, being the promoter of the railroad, would know in advance the location of the proposed road and by furnishing this information to the partnership could better enable them to purchase the lands to advantage along the proposed route. So it will be seen that there are circumstances in the case tending to support each of the parties. On February 20, 1911, before any of the lands were sold, C. F. Toll wrote to Geo. C. Lewis the following letter:

"Dear Sir: Please find enclosed statement of your account. This is not a full statement as I do not include only one tract of land. I do not include the $800 paid out on the Toll land in Sec. 10 or the money paid on the Fisher place or the money paid on the Ehret place. Now, Judge, I want you to not lay this statement aside and forget it, but I want you to look at it and then shut your eyes and write me out a check. Now Judge do send me a check for

some, if not very much as every dollar will help. I am in dire need of some money."

This letter tends to corroborate the testimony of Lewis as to the partnership. The finding of the chancellor was in favor of Lewis on this point, and we cannot say that his finding was against the preponderance of the evidence. Therefore, under the settled rule of practice in this State, it will not be disturbed on appeal.

It is further insisted by counsel for the defendants that, even if there is sufficient evidence to sustain a partnership for the purchase and sale of these lands, the chancellor erred in his statement of accounts between the parties. The chancellor delivered a written opinion in the case. He took up each tract separately and rendered an itemized statement of the accounts between the parties as to each tract. He charged Toll with the amount for which he sold each tract of land and credited him with the amount paid by him for the purchase price and the expenses allowed him. Toll was also charged with the amounts paid by Lewis on the purchase price of each tract. A balance was struck between the parties and judgment rendered in favor of Lewis against C. F. Toll for the amount found to be due him. The Fisher tract was first taken up by the chancellor. The title to this particular tract was first taken in the name of Lewis, who furnished but a small part of the purchase price. Subsequently Toll paid the balance of the purchase money and Lewis conveyed the land to him. On August 24, 1912, Toll sold the land for $7,760, and retained the proceeds. He had already expended $5,460.11 on the purchase price of the land. The court allowed him certain payments and expenses incurred by him amounting in the aggregate to $1,421.10. This added to the original cost of the land made a total cost of $6,881.21, leaving a net profit on the transaction of $878.79. The chancellor found that Lewis, was entitled to one-half of the net profit which amounted to $439.39. To this was added $200 which he found Lewis had paid on the purchase price of the land, making a total

of $639.39, which the chancellor found to be due Lewis by
Toll on this transaction and interest was allowed thereon
at the rate of 6 per cent. per annum from August 24, 1912,
the date on which Toll sold the lands.

It is also claimed by counsel for the defendants that
the court erred in disallowing an item of $900 claimed to
have been paid to William Camm by Toll as commissions
in the sale of the lands. The court did allow Toll $900
to another agent for selling these lands. The lands were
sold to a man in Nebraska, and this $900 was allowed to
an agent there. Toll claims that the purchaser first wrote
to Camm, who lived near him, in regard to the purchase
of some lands; that Camm turned the letter over to him
and that in this way he got in communication with the
man who afterwards purchased the lands; that he prom-
ised Camm to pay him $5 per acre which amounted to
$900 for his services, and that this was what he usually
paid agents for making a deal of this sort. Lewis testi-
fied that 5 per cent. of the purchase price would be an
adequate compensation for the services of the real estate
broker in making the sale. Be that as it may, the court
allowed Toll the amount claimed by him for the services
of one real estate broker. Toll was not entitled to charge
the partnership with the services of two such agents. A
fair fee for one agent was all that he was entitled to
charge the partnership with. In addition to this the
court allowed him $160 for the expenses of a trip he made
to Nebraska relative to the sale of this land. We are of
the opinion that he properly disallowed this item of $900
claimed to have been paid to William Camm.

It is also claimed by counsel for the defendants that
the court erred in not allowing him $50 paid to the in-
spector of an insurance company to which they applied
for a mortgage on the lands. Lewis testified that he was
familiar with the proceedings of the particular insurance
company and that its practice was to deduct the inspec-
tor's fee from the amount of money applied for in the loan
and furnished to the applicant. This may be true, but on
the other hand Toll testified positively that he had paid

this amount of money himself to the inspector, and his positive testimony in this regard should overcome the testimony of Lewis as to the usual practice of the insurance company in such cases. Therefore we are of the opinion that the court should have allowed it to the defendant, Toll.

Complaint is also made that the court charged Toll with $200, which Lewis claims to have paid on the purchase price of the lands. On this item Lewis testified that he made the payment and Toll denied such to be the case. Lewis is corroborated by a letter written at the time by the attorneys of the person from whom the lands were purchased acknowledging the receipt of the money from Lewis. The chancellor correctly found that Lewis paid this item of $200 on the purchase price of the lands. It is claimed by counsel for the defendant that only one-half of the purchase price paid by Lewis ought to have been charged against Toll's share of the profits. This argument is based on the theory that one-half of the amount paid by Lewis on the purchase price inured to his benefit alone because it was his duty to pay that amount. This would be true but for the fact that in crediting himself with the purchase price Toll included this $200, and in that way secured wholly to himself a credit for an amount of money which Lewis had paid. For this reason the court was right in adding the $200 which it found that Lewis had paid on the purchase price of the land, to one-half of the net profits and charging the same against Toll.

The court took up the two tracts of land known as the Hamilton and Ehret tracts and treated them together. Toll was charged with the amount for which he sold the land and was credited with the amount paid by him for them and in addition was allowed certain other items of expense. Without going into detail, we find that the conclusions reached by the chancellor on these two tracts were correct. The remaining tract of land was not sold by Toll, but he mortgaged it to his brother for $700 and

has not made any accounting to Lewis. The validity of the mortgage was not questioned. The court ordered the lands to be sold and gave the defendant, Geo. O. Toll, thirty days from the date of the rendition of the decree in which to assert his claim for the amount due him on his mortgage. Whatever amount was realized over and above the mortgage indebtedness was directed to be divided equally between Lewis and C. F. Toll. The court was also of the opinion that Lewis was entitled to recover from C. F. Toll one-half of what was found to be due Geo. F. Toll on the mortgage. This was correct because it was shown that the mortgage was given for the individual benefit of C. F. Toll and that neither Lewis nor the partnership derived any benefit therefrom. The court also found that the amount due from Toll to Lewis should be a lien upon any of the proceeds of the sale which would otherwise belong to C. F. Toll. This was correct. This is a suit for an accounting between partners. It became necessary to sell the partnership property in order to adjust the equities between the partners, and it was proper to adjudge a lien in favor of one of the partners for any balance found to be due against the proceeds of the sale of the partnership property which would otherwise go to the other partner.

It follows that the decree must be reversed and the cause will be remanded with directions to the chancellor to enter a decree in accordance with this opinion.